

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00447-CR

Leticia **LOPEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 187th Judicial District Court, Bexar County, Texas
Trial Court No. 2019CR5852W
Honorable Raymond Angelini, Judge Presiding

Opinion by:    Liza A. Rodriguez, Justice

Sitting:       Beth Watkins, Justice
               Liza A. Rodriguez, Justice
               Sandee Bryan Marion, Chief Justice (Ret.)[1]

Delivered and Filed: August 9, 2023

AFFIRMED AS MODIFIED

Leticia Lopez appeals the trial court's judgment revoking her community supervision and sentencing her to two years of confinement in state jail. Lopez brings four issues on appeal: (1) whether the trial court abused its discretion in revoking her community supervision; (2) whether the trial court abused its discretion in denying her oral motion for continuance; (3) whether the trial court erred in not appointing her counsel for the revocation proceeding when she "indicated that she did not wish for her retained counsel to represent her"; and (4) whether there is a clerical

---

[1]Sitting by assignment pursuant to section 74.003(b) of the Texas Government Code

error in the judgment because it reflects she pled "true" to the State's motion to revoke when she actually pled "not true." Because we agree the trial court's judgment should be modified to reflect Lopez's plea of "not true" to the allegations contained in the State's motion to revoke, we affirm the judgment as modified.

## BACKGROUND

On May 29, 2019, pursuant to a plea-bargain agreement, Lopez pled no contest to theft under $2,000 (enhanced) and was sentenced to two years confinement in state jail and a $2,500 fine. In accordance with the plea-bargain agreement, her sentence was suspended, and she was placed on community supervision for four years. On April 22, 2021, the State filed a motion to revoke Lopez's community supervision. On May 8, 2022, the State amended its motion to revoke. On July 8, 2022, the trial court held a revocation hearing. Lopez pled not true to the allegations contained within the State's motion. After hearing testimony, the trial court found Lopez violated Condition No. 1 by committing the offense of evading arrest while on community supervision. Lopez's community supervision was revoked, and she was sentenced to two years of confinement in the state jail. Lopez appealed.

## MOTION TO REVOKE

In her first issue, Lopez argues the trial court abused its discretion in revoking her community supervision because no evidence supports the State's allegation that she committed the offense of evading arrest with a vehicle while on community supervision. We review a trial court's decision to revoke community supervision for abuse of discretion. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013). A trial court abuses its discretion when its decision is arbitrary, unreasonable, or lies outside the zone of reasonable disagreement. *Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010).

Proof of a violation of one condition of community supervision is sufficient to support the trial court's decision to revoke. *Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012). Thus, "the trial court has discretion to revoke community supervision when a preponderance of the evidence supports one of the State's allegations that the defendant violated a condition of his community supervision." *Leonard v. State*, 385 S.W.3d 570, 576 (Tex. Crim. App. 2012). "In the probation-revocation context, 'a preponderance of the evidence' means 'that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation.'" *Hacker*, 389 S.W.3d at 865 (quoting *Rickels v. State*, 202 S.W.3d 759, 764 (Tex. Crim. App. 2006)). In determining whether the trial court abused its discretion, we view the evidence in the light most favorable to the trial court's decision, deferring to the court's resolution of disputed facts and the reasonable inferences therefrom. *Jones v. State*, 589 S.W.2d 419, 421 (Tex. Crim. App. 1979); *Torres v. State*, 103 S.W.3d 623, 625 (Tex. App.—San Antonio 2003, no pet.); *Hays v. State*, 933 S.W.2d 659, 660 (Tex. App.—San Antonio 1996, no pet.).

A person commits the offense of evading arrest or detention if "he intentionally flees from a person he knows is a peace officer . . . attempting lawfully to arrest or detain him." TEX. PENAL CODE § 38.04(a). At the revocation hearing, Officer Christian Castillo of the San Antonio Police Department testified that he was on patrol when he noticed a vehicle, which was also stopped at the light, had an expired registration. He turned on the lights and siren of his patrol car and attempted to conduct a traffic stop. However, the vehicle did not stop, forcing him to "disengage" in accordance with police procedure. According to Officer Castillo, officers are not allowed to pursue a vehicle for traffic violations. Thus, he continued to follow the vehicle "at a code-one pace" for twelve to fifteen minutes until it stopped at a residence. A "code-one pace" "means no lights, no sirens, [and] [o]bey all traffic laws." Officer Castillo then approached the driver, who was identified as Lopez.

Officer Castillo was questioned about the amount of time the patrol lights were turned on:

We turned [the lights] on prior to the light at Roland and I-10. We kept them on the entire time, and then the light turned green [and we] proceeded through the intersection. And then we turned them off around when she was about to get onto the I-10 onramp from Roland. At that point we turned them off.

Officer Castillo estimated the distance from the stop light to the freeway onramp was "[a]bout a block." Officer Castillo further explained Lopez's actions at the red light:

Q: Have you ever heard that people are supposed to get out of the way of police car when their lights [are] on?
A: That's—sometimes when [patrol cars are] running lights and sirens to an emergency call, they have to move out of the way.
Q: People do that, don't they?
A: Sometimes, correct. But that was not the case.
Q: When it turned green, she moved forward?
A: Yeah. She drove through the green light; correct.
Q: You turned your lights off at the next light?
A: I don't remember exactly. I'm pretty sure it's after the light. When she got onto the ramp [to the freeway], that's when we disengage[d] our lights and sirens.
Q: Okay.
A: But we alerted her. [I] [p]ressed my horn and siren to alert her, "Hey we're trying to conduct a traffic stop on you in this specific vehicle." We didn't try to make a way around her. We were behind her trying to alert her.

Officer Castillo testified that Lopez never moved out of their way, and they followed her all the way to her residence for a period of twelve to fifteen minutes. When Lopez got out of her vehicle, Officer Castillo and his partner conducted a felony traffic stop.

Viewing the evidence in the light most favorable to the trial court's ruling, we conclude the trial court could reasonably have found by a preponderance of the evidence that Lopez committed the offense of evading arrest while on community supervision. *See Leonard*, 385 S.W.3d at 576. While Lopez emphasizes that "there was no testimony to establish that [Officer] Castillo followed Lopez with emergency lights flashing and siren for an extended period of time," the evading arrest statute does not require that an officer keep his patrol car's emergency lights flashing and siren on for an extended period of time. *See* TEX. PENAL CODE § 38.04. Section 38.04

requires only evidence from which a reasonable factfinder could infer that a person knew an officer was attempting to arrest or detain him and fled from the officer's lawful attempt to arrest or detain. *See id*.; *Miller v. State*, 605 S.W.3d 877, 882 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) (explaining elements of evading arrest "are (1) intentionally (2) fleeing (3) from a person whom the defendant knows is a peace officer (4) trying to lawfully detain or arrest him"). "'[F]leeing' is 'anything less than prompt compliance with an officer's direction to stop.'" *Lopez v. State*, 415 S.W.3d 495, 497 (Tex. App.—San Antonio 2013, no pet.) (quoting *Horne v. State*, 228 S.W.3d 442, 446 (Tex. App.—Texarkana 2007, no pet.)). Thus, "fleeing slowly is still fleeing." *Id*. (quoting *Horne*, 228 S.W.3d at 446).

Here, the officer's testimony showed that he alerted Lopez of the officer's intent to conduct a traffic stop, followed Lopez with his lights and siren on until Lopez entered the freeway, and then continued to follow Lopez for another twelve to fifteen minutes until she stopped at her residence. The officer testified that when he had his lights and siren on, Lopez did not attempt to move out of the way of the patrol car. Further, during the twelve to fifteen minutes Lopez was followed on the freeway until she reached her residence, Lopez made no attempt to move out the way of the patrol car. From this evidence, the trial court could reasonably conclude by a preponderance of the evidence that Lopez was aware the officer was attempting to lawfully detain her but fled instead. *See Lopez*, 415 S.W.3d at 497 (holding that "[f]rom the officers' testimony that their lights and siren were activated for 0.6 miles or approximately one and one-half minutes, the jury could reasonably infer that Lopez was aware the officers were attempting to detain him but intended to flee to the driveway of his house"). As there was evidence to support the trial court's finding that Lopez committed the offense of evading arrest while on community supervision, we hold the trial court did not abuse its discretion in revoking Lopez's community supervision.

### MOTION FOR CONTINUANCE

In her second issue, Lopez argues the trial court erred in denying her oral motion for continuance. The State responds that Lopez has not preserved error for appellate review. We agree with the State.

Article 29.03 of the Texas Code of Criminal Procedure allows a criminal action to be continued "on the written motion of the State or of the defendant, upon sufficient cause," "which cause shall be fully set forth in the motion." TEX. CODE CRIM. PROC. art. 29.03. Article 29.08 requires all motions for continuance to be "sworn to by a person having personal knowledge of the facts relied on for the continuance." TEX. CODE CRIM. PROC. art. 29.08. The court of criminal appeals has "construed these statutes to require a sworn written motion to preserve appellate review from a trial judge's denial of a motion for a continuance." *Anderson v. State*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009). "Thus, if a party makes an unsworn oral motion for a continuance and the trial judge denies it, the party forfeits the right to complain about the judge's ruling on appeal." *Id*. At the revocation hearing, Lopez made an oral motion for continuance; she did not move by sworn written motion. Thus, she has failed to preserve this issue for appellate review. *See id*. at 280-81 (refusing to recognize a "'due process' exception to the preservation requirements governing continuance motions in [a]rticles 29.03 and 29.08" and holding that "by making an unsworn pretrial oral motion for a continuance, [the appellant] failed to preserve" his appellate issue).

### APPOINTMENT OF COUNSEL

In her third issue, Lopez argues she was denied the right to counsel of her choice by the trial court at the revocation hearing. The right to the assistance of counsel includes the defendant's right to obtain that assistance from retained counsel of his choosing. *United States v. Gonzalez-Lopez*, 548 U.S.140, 144 (2006); *see Powell v. Alabama*, 287 U.S. 45, 53 (1932) ("[A] defendant should be afforded a fair opportunity to secure counsel of his own choice."). However, a

defendant's right to counsel of his choice is not absolute. *See Gonzalez v. State*, 117 S.W.3d 831, 837 (Tex. Crim. App. 2003). "[W]hile there is a strong presumption in favor of a defendant's right to retain counsel of choice, this presumption may be overridden by other important considerations relating to the integrity of the judicial process and the fair and orderly administration of justice." *Id*. Among other things, "a trial court [has] wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." *Gonzalez-Lopez*, 548 U.S. at 152 (citations omitted). Accordingly, "an accused's right to represent himself or select his own counsel cannot be manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." *Webb v. State*, 533 S.W.2d 780, 784 (Tex. Crim. App. 1976). "Thus, an accused may not wait until the day of trial to demand different counsel or to request that counsel be dismissed so that he may retain other counsel." *Id*.

The revocation was held on July 8, 2022, and Lopez appeared with her retained counsel. At the beginning of the hearing, Lopez asked the trial court if she could hire a new attorney. The trial court informed her that she had five minutes, but the revocation hearing was proceeding. Lopez then asked the trial court if it could appoint her an attorney. The trial court denied her request, stating that her retained counsel was her lawyer and if she wanted to hire another lawyer, she had about five to ten minutes. The revocation hearing then proceeded with Lopez's retained counsel representing her.

Lopez first complains that the trial court did not appoint her new counsel. However, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *Gonzalez-Lopez*, 548 U.S. at 151. Lopez also complains that the trial court did not make any inquiry to determine whether she was eligible for court-appointed counsel and failed to state the grounds for refusing her request. However, Lopez appeared at the revocation hearing with retained counsel. It is only "the appearance of a criminal defendant [appears] in court *without*

*counsel* . . . [that] necessitates an examination by the trial judge to assure that the defendant is actually aware of his right to retain an attorney to discover whether he intends to do so." *Oliver v. State*, 872 S.W.2d 713, 714 (Tex. Crim. App. 1994) (emphasis added). As Lopez appeared with retained counsel, the trial court did not err in not making an inquiry.

Further, we note that the record supports the trial court's discretion in proceeding with the revocation hearing. *See Gonzalez-Lopez*, 548 U.S. at 152 ("[A] trial court [has] wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar."). The record shows that Lopez was on notice that the revocation hearing was pending as early as May 2, 2022, when her retained counsel filed a notice of appearance. The record further reflects that Lopez's retained counsel made no attempt to withdraw before the revocation hearing on July 8, 2022. Thus, the record reflects that Lopez had sufficient time to ensure she had the counsel of her choice at the revocation hearing. *See Webb*, 533 S.W.2d at 784 ("[A]n accused may not wait until the day of trial to demand different counsel or to request that counsel be dismissed so that he may retain other counsel.").

### CLERICAL ERROR

Finally, Lopez argues the trial court's judgment erroneously reflects that she pled "true" to the allegations in the State's motion to revoke when she actually pled "not true." The State concedes the judgment does not accurately reflect that Lopez pled "not true" to the State's allegations. We therefore modify the judgment to reflect that Lopez pled "not true" to the allegations in the State's motion to revoke. As modified, we affirm the judgment of the trial court.

Liza A. Rodriguez, Justice

Do not publish